IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE INJECTAFER PRODUCTS LIABILITY LITIGATION<br><br>**This Document Relates To:**<br><br>*Adams v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-03454-WB<br>*Armendariz v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-02839-WB<br>*Edwards v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-00067-WB<br>*Ervin v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-01951-WB<br>*Kessler v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-00746-WB<br>*Marullo v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-03002-WB<br>*Moore v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-01952-WB<br>*Raymond v. Luitpold Pharmaceuticals, Inc*., 2:20-cv-03004-WB<br>*Rutherford v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-04920-WB<br>*Smith v. Luitpold Pharmaceuticals, Inc.,* 2:21-cv-00601-WB<br>*Ward v. Luitpold Pharmaceuticals, Inc*., 2:21-cv-02489-WB<br>*Whitehead v. Luitpold Pharmaceuticals, Inc.,* 2:21-cv-03364-WB<br>*Whitlock v. Luitpold Pharmaceuticals, Inc.,* 2:21-cv-02487-WB | EASTERN DISTRICT OF PENNSYLVANIA<br><br>PHILADELPHIA DIVISION<br><br><br>CIVIL ACTION NO.<br>2:19-CV-00276-WB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
TO ESTABLISH A QUALIFIED SETTLEMENT FUND
AND TO APPOINT A QSF ADMINISTRATOR**

In order to aid in the efficient processing and administration of a Confidential Settlement Agreement between certain individuals represented by Robins Kaplan LLP and Daiichi Sankyo, Inc., Daiichi Sankyo U.S. Holdings, Inc., American Regent, Inc, and Vifor (International) AG ("Defendants"), Plaintiffs Adams, Armendariz, Edwards, Ervin, Kessler, Marullo, Moore, Raymond, Rutherford, Smith, Ward, Whitehead, and Whitlock ("Plaintiffs"), by and through their counsel Robins Kaplan LLP ("Plaintiffs' Counsel"), move this Court for an Order to:

1

(i) establish a Qualified Settlement Fund, to be legally titled the Robins Kaplan INJ Qualified Settlement Fund ("RK QSF"), pursuant to the terms of the Confidential Settlement Agreement and within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation sections 1.468B-1, *et seq.*; (ii) appoint an administrator for the RK QSF. In support of this Motion, Plaintiffs respectfully state:

1. Plaintiffs' Counsel has conferred with Defendants' Counsel, who have authorized Plaintiffs' Counsel to represent to the Court that Defendants consent to the granting of this motion.

2. Plaintiffs sought damages from Defendants arising from exposure to products containing the active pharmaceutical compound ferric carboxymaltose (U.S. Brand name: Injectafer), through various legal actions, which were consolidated before this Court by Order dated March 2, 2021 [Doc No. 186].

3. Robins Kaplan LLP, on behalf of Plaintiffs and other individuals it represented ("Settling Persons"), and Defendants entered into a private Confidential Settlement Agreement ("CSA") to resolve or satisfy certain alleged torts or violations of law in connection with the use of ferric carboxymaltose products. Settling Persons allegedly suffered personal injury caused by Defendants' products, and the claims were made on account of alleged physical bodily injury. In resolving these claims, pursuant to the CSA, the Parties agreed to establish a Qualified Settlement Fund ("QSF"), under the applicable Treasury Regulations and Internal Revenue Codes, and subject to this Court's approval.

4. This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory,

possession, or political subdivision thereof, or any agency or instrumentality (including a court of law)… and is subject to the continuing jurisdiction of that governmental authority."

5. Plaintiffs hereby request this Court establish a QSF, to be legally titled the Robins Kaplan INJ Qualified Settlement Fund ("RK QSF"), within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-1, *et seq*. ("Regulations"), and remain subject to the continuing jurisdiction of this Court until the funds in the RK QSF are distributed in their entirety or upon further order of this Court, consistent with Treasury Regulation Section 1.468B-1(c)(1).

6. This Court should approve the establishment of the RK QSF as it is in the best interests of all the Parties, including Plaintiffs. Payment of Settlement Funds as required by the CSA into a QSF will afford Plaintiffs' Counsel time to identify and resolve all liens and/or subrogation rights and for the agreed-upon Special Master to allocate funds, while knowing that the funds are available and held by a third-party, and while ending Defendants payment obligations pursuant to the CSA.

7. Plaintiffs request that, as consented to by Defendants, attorney Amy Gernon of Gernon Law LLC, be appointed as the QSF Administrator and administer the QSF within the meaning of Treasury Regulations § 1.468B-2(k), the CSA, and a custodian agreement.

8. Plaintiffs request that, pursuant to Section 468B of the Internal Revenue Code and the Regulations, the QSF Administrator be empowered to take all actions the QSF Administrator deems necessary to assure that the QSF is treated as a "qualified settlement fund." Plaintiffs request the QSF Administrator be granted the authority to make distributions from the QSF consistent with the CSA and this Order, including segregating Settlement Funds if necessary,

distributing attorneys' fees and costs, distributing settlement and administrative expense payments, and investing the funds.

9. Plaintiffs request that no bond be required, provided that all settlement proceeds, which include all principal and interest earned thereon, shall be deposited in an account held in custody at Western Alliance Bank (the "Bank"), a financial institution with headquarters in the state of Arizona for the benefit of, and titled in the legal name of, the Robins Kaplan INJ Qualified Settlement Fund ("RK QSF"). The RK QSF will be operated pursuant to the CSA and the terms and conditions of a custodian agreement that will be entered into between Plaintiffs' Counsel, the QSF Administrator, and the Bank. The custodian agreement will provide for accounts to be established and used solely for the permissible purposes in administering the RK QSF pursuant to the CSA.

10. Plaintiffs request that the QSF Administrator retain the right to remove the Bank with or without cause, in its sole and absolute discretion, and that the QSF Administrator may designate a replacement bank upon the written consent of Plaintiffs' Counsel and this Court. In the event of such replacement, the terms and conditions of this Order, including without limitation, those addressing bond requirements, investments, and distributions from the RK QSF, would apply to any such replacement bank.

11. After a QSF is established, all Settlements Funds required to be paid by Defendants under the terms of the CSA to the Settling Persons shall be deposited into the RK QSF, under the terms of the CSA. Once required amounts are deposited into the RK QSF by or on behalf of the Defendants, Defendant's payment obligation under the terms of the CSA is fulfilled and satisfied.

12. The monies in the RK QSF will be the sole property of the RK QSF.  Until such time as monies are distributed from the RK QSF, Settling Persons and Plaintiffs' Counsel will not

possess any rights to demand or receive any portion of the Settlement Funds or to mortgage, pledge or encumber the same in any manner. To the extent possible, Plaintiffs request that this shall be construed to prevent Settling Persons from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the RK QSF.

13. The Bank will not be allowed to distribute any income or principal from the RK QSF except upon written instructions of the QSF Administrator.

14. The Bank will be responsible for following the written investment instructions of the QSF Administrator, and the QSF Administrator will be responsible for ensuring that a principal preservation investment policy is implemented. Such investments must be in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government.

15. The QSF, by and through the QSF Administrator, will be allowed to purchase and assign structured settlements created under release agreements with individual Settling Persons. Any structured settlement annuity contract will be issued by a life insurance company that is rated A+ or better by A.M. Best Company. Such Settling Persons (and Plaintiffs' Counsel, as applicable), will agree in writing to a discharge of the proceeds from the QSF and the QSF Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the QSF Administrator, any necessary documents required or related to the discharge of those liabilities.

16. Any interest or investment income earned on the account(s) of the QSF shall inure to the benefit of the QSF and shall be used in the following order: first, to pay the costs of claims

administration costs (including, without limitation, the expenses of tax attorneys and tax return administration/preparation costs and accountants bank fees, wire fees, check stoppage fees, audits, and legal costs), and any other costs associated with administration of the QSF; second, to pay any taxes; and third, to the benefit of the Settling Persons. The QSF Administrator shall direct any and all payments of such interest or investment income and any interest accrued on the QSF account.

17. The QSF Administrator shall not be liable for any losses as a result of investing the Settlement Funds as directed by the Court. Any such losses shall not be recoverable from the Parties, and the Parties shall have no responsibility for the QSF Administrator's performance. As provided by the terms of the CSA, Defendants and their insurers shall in no way be responsible for the administration of the QSF or the conduct of the QSF Administrator.

18. The QSF Administrator shall disburse funds from the QSF in accordance with the terms of the CSA and shall withhold from payments to the Settling Persons the amounts necessary for the satisfaction of liens as required by the CSA.

19. The receipt and/or investment of the Settlement Funds shall be confirmed to Plaintiffs' Counsel by the QSF Administrator as soon as practicable, but no less than within ten (10) days of the end of each calendar quarter, by account statements or other reasonable methods, that include a listing of receipts, investment earnings, and disbursements.

20. Upon final distribution of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to wind down the QSF and, thereafter, be discharged from any further responsibility with respect to the QSF.

Dated: October 25, 2023                                    Respectfully submitted,

**ROBINS KAPLAN LLP**

*s/Rayna E. Kessler*_____
Rayna E. Kessler, Esq.
PA ID No. 309607
1325 Avenue of the Americas, Suite 2601
New York, New York 10019
Telephone: (212) 980-7431
Facsimile:  (212) 980-7499
E-mail: RKessler@RobinsKaplan.com

Kate Jaycox, Esq. (*admitted pro hac vice*)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181
Email: KJaycox@RobinsKaplan.com

*Attorneys for Plaintiffs*