# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE INJECTAFER PRODUCTS LIABILITY LITIGATION** | EASTERN DISTRICT OF PENNSYLVANIA |
| **This Document Relates To:** | |
| *Adams v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-03454-WB | PHILADELPHIA DIVISION |
| *Armendariz v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-02839-WB | |
| *Edwards v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-00067-WB | |
| *Ervin v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-01951-WB | |
| *Kessler v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-00746-WB | |
| *Marullo v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-03002-WB | CIVIL ACTION NO. |
| *Moore v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-01952-WB | 2:19-CV-00276-WB |
| *Raymond v. Luitpold Pharmaceuticals, Inc.*, 2:20-cv-03004-WB | |
| *Rutherford v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-04920-WB | |
| *Smith v. Luitpold Pharmaceuticals, Inc.,* 2:21-cv-00601-WB | |
| *Ward v. Luitpold Pharmaceuticals, Inc.*, 2:21-cv-02489-WB | |
| *Whitehead v. Luitpold Pharmaceuticals, Inc.,* 2:21-cv-03364-WB | |
| *Whitlock v. Luitpold Pharmaceuticals, Inc.,* 2:21-cv-02487-WB | |

## [PROPOSED] ORDER TO ESTABLISH QUALIFIED SETTLEMENT FUND

Plaintiffs Adams, Armendariz, Edwards, Ervin, Kessler, Marullo, Moore, Raymond, Rutherford, Smith, Ward, Whitehead, and Whitlock ("Plaintiffs"), by and through their counsel Robins Kaplan LLP, have moved this Court for entry of an Order to aid in the efficient processing and administration of a Confidential Settlement Agreement between Robins Kaplan LLP, on behalf of their clients ("Settling Persons") and Daiichi Sankyo, Inc., Daiichi Sankyo U.S. Holdings, Inc., American Regent, Inc., and Vifor (International) AG ("Defendants"). In particular, Plaintiffs' Unopposed Motion to Establish a Qualified Settlement Fund and to Appoint a QSF Administrator (the "Motion") seeks an Order to (i) establish a Qualified Settlement Fund pursuant

1

to the terms of the Confidential Settlement Agreement and within the meaning of section 468B of

the Internal Revenue Code of 1986, as amended and Treasury Regulation sections 1.468B-1, *et seq.*; (ii) appoint a Qualified Settlement Fund administrator.

The Court, having reviewed Plaintiffs' Motion, and finding good and sufficient cause, hereby FINDS and ORDERS the following:

1.      The Unopposed Motion to Establish a Qualified Settlement Fund and to Appoint a QSF Administrator [Doc. No. _____] is GRANTED.

2.      Robins Kaplan LLP, on behalf of Settling Persons including Plaintiffs, and Defendants entered into a private Confidential Settlement Agreement ("CSA") to resolve or satisfy certain alleged torts or violations of law in connection with the use of ferric carboxymaltose products. Settling Persons allegedly suffered personal injury caused by Defendants' products, and the claims were made on account of alleged physical bodily injury. In resolving these claims, pursuant to the CSA, the Parties agreed to establish a Qualified Settlement Fund ("QSF"), under the applicable Treasury Regulations and Internal Revenue Codes, and subject to this Court's approval.

3.      This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law)… and is subject to the continuing jurisdiction of that governmental authority."

4.      In order to assist in the administration of the CSA between Settling Persons and Defendants, a QSF shall be established within the meaning of section 468B of the Internal Revenue

Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-1, *et seq*. ("Regulations"), and remain subject to the continuing jurisdiction of this Court until the funds in the QSF are distributed in their entirety or upon further order of this Court, consistent with Treasury Regulation Section 1.468B-1(c)(1). The fund shall legally be titled the Robins Kaplan INJ Qualified Settlement Fund ("RK QSF").

5.      As requested by Plaintiffs and consented to by Defendants, attorney Amy Gernon of Gernon Law LLC, is hereby appointed to be the QSF Administrator and to administer the QSF within the meaning of Treasury Regulations § 1.468B-2(k).

6.      Under Section 468B of the Internal Revenue Code and the Regulations, the QSF Administrator shall be empowered to take all actions the QSF Administrator deems necessary to assure that the QSF is treated as a "qualified settlement fund" under Section 468B of the Internal Revenue Code and the Regulations. The QSF Administrator is granted the authority to make distributions from the QSF consistent with the CSA and this Order.

7.      No bond is required, provided that all settlement proceeds, which include all principal and interest earned thereon, shall be deposited in an account held in custody at Western Alliance Bank (the "Bank"), a financial institution with headquarters in the state of Arizona for the benefit of, and titled in the legal name of, the Robins Kaplan INJ Qualified Settlement Fund. The RK QSF will be operated pursuant to the CSA and the terms and conditions of a custodian agreement that will be entered into between Plaintiffs' Counsel, the QSF Administrator, and the Bank. The custodian agreement will provide for accounts to be established and used solely for the permissible purposes in administering the RK QSF pursuant to the CSA.

8.      The QSF, by and through the QSF Administrator, may purchase and assign any structured settlements created under any release agreements with individual Settling Persons. Any

structured settlement annuity contract shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company. Such Settling Persons (and Plaintiffs' Counsel, as applicable), shall agree in writing to a discharge of the proceeds from the QSF and the QSF Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the QSF Administrator, any necessary documents required or related to the discharge of those liabilities.

9.      The QSF Administrator retains the right to remove the Bank with or without cause, in its sole and absolute discretion. The QSF Administrator may designate a replacement bank upon the written consent of Plaintiffs' Counsel and this Court. In the event of such replacement, the terms and conditions of this Order, including without limitation, those addressing bond requirements, investments, and distributions from the RK QSF, shall apply to any such replacement bank.

10.      All Settlement Funds required to be paid by Defendants under the terms of the CSA with Settling Persons shall be deposited into the RK QSF, under the terms of the CSA. Once required amounts are deposited into the QSF by or on behalf of the Defendants, Defendants' payment obligations under the terms of the CSA are fulfilled and satisfied.

11.      The monies in the RK QSF are the sole property of the RK QSF.  Until such time as monies are distributed from the RK QSF, Settling Persons and Plaintiffs' Counsel shall not possess any rights to demand or receive any portion of the Settlement Funds or to mortgage, pledge or encumber the same in any manner. To the extent possible, this shall be construed so as to prevent the Settling Persons from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the RK QSF.

12.     The Bank shall not be allowed to distribute any income or principal from the QSF except upon written instructions of the QSF Administrator.

13.     The Bank shall be responsible for following the written investment instructions of the QSF Administrator. The QSF Administrator shall be responsible for ensuring that a principal preservation investment policy is implemented. Such investments must be in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government.

14.     Any interest or investment income earned on the account(s) of the QSF shall inure to  the benefit of the QSF and shall be used in the following order: first, to pay the costs of claims administration (including, without limitation, the expenses of tax attorneys and tax return administration/preparation costs and accountants bank fees, wire fees, check stoppage fees, audits, and legal costs), and any other costs associated with administration of the QSF; second, to pay any taxes; and third, to the benefit of the Settling Persons. The QSF Administrator shall direct any and all payments of such interest or investment income and any interest accrued on the QSF account.

15.     The QSF Administrator shall not be liable for any losses as a result of investing the Settlement Funds as directed by the Court. Any such losses shall not be recoverable from the Parties, and the Parties shall have no responsibility for the QSF Administrator's performance.

16.     As provided by the terms of the CSA, Defendants and their insurers shall in no way be responsible for the administration of the QSF or the conduct of the QSF Administrator. The QSF Administrator shall disburse funds from the QSF in accordance with the terms of the CSA

and shall withhold from payments to the Settling Persons the amounts necessary for the satisfaction of liens as required by the CSA.

17.     The receipt and/or investment of the Settlement Funds shall be confirmed to Plaintiffs' Counsel by the QSF Administrator as soon as practicable, but no less than within ten (10) days of the end of each calendar quarter, by account statements or other reasonable methods, that include a listing of receipts, investment earnings, and disbursements.

18.     Upon final distribution of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to wind down the QSF and, thereafter, be discharged from any further responsibility with respect to the QSF.

**IT IS SO ORDERED.**


Dated: _____


                                        **BY THE COURT:**


                                        _____
                                        **WENDY BEETLESTONE, J.**